*Atlee Pomerene,* for motion.

*Sterling & Brancher,* for defendant.

---

## THE COVERING OF REVOLVING SHAFTING, WHEELS, Etc.

[Circuit Court of Lucas County.]

GEORGE W. CROSSMAN v. P. & T. DEGNAN SAND, DREDGING & LIGHTERAGE CO.

Decided, March 7, 1903.

94 *O. L.,* 42—*Providing for the Boxing of Revolving Shafting, Wheels, Etc.—Not Applicable to the Reciprocating Parts of an Engine— Contributory Negligence of a Fireman.*

1. The statutory requirement that guards or casings be placed over revolving shafting, etc., and providing that keys, bolts and set screws projecting unevenly from revolving wheels shall be enclosed, does not include the reciprocating parts of a steam engine.
2. One employed about an engine, who falls among the moving rods while attempting to perform a duty not required or expected of him while the machinery is in motion, is guilty of such contributory negligence as will prevent his recovery for the injuries received.

HAYNES, J.; PARKER, J., and HULL, J., concur.

Heard on error.

This is an action brought by Crossman to recover for damages which he suffered in the employ of the defendant in a machine that they were operating on the dock, which was used for the purpose of unloading sand. Upon the trial the case was taken from the jury and a verdict directed for the defendant.

The plaintiff was an employe of the defendant as a laborer. The defendant was engaged in unloading sand from a scow it had at docks near Water street, in the city of Toledo. It used for that purpose a Macmiller machine for unloading the sand.

This consisted of a rotary wheel, communicating with the boat by a chain, an engine and boiler—two engines, I think—connected with machinery outside, and was used for the purpose of taking the sand from the vessel to the dock. On the evening of the day of the injury, about the time the plaintiff was leaving for home, Degnan said to him, or asked him, if he wouldn't go over to the building and help operate the machine, as the fireman wanted to go away. They had a load of sand which had to be unloaded by ten o'clock that evening. The plaintiff consented to go, and did go. He had before worked on that machine, and the engineer says fired before. He asked the plaintiff when he came if he knew about the business, and he said yes, he was well acquainted with it. He went over and was engaged in firing during the evening. His work brought him near the door and not to any other part of the building. He was simply moving coal from a box by the door into the furnace. It was his duty, as alleged in the petition, after the work was done, to close certain windows or openings in the building. There were four of them. They were kept open for the purpose of ventilation, and closed by sliding wooden doors. Instead of waiting until the work was completed and closing these after the work was finished, the plaintiff, when there were some two buckets to be moved from the boat to the dock, started out to close these windows, evidently thinking to have them closed by the time the work was practically done. He went to the other side of the building and stepped upon something to reach up to the door or window. That particular window bound a little, and thereupon he stepped up higher on a ladder, and from there, with one foot at least, attempted to step over on to a shelf that was about five feet above the floor, immediately over some part of the machinery of the engine, and he stepped his foot on some movable substance, and his foot turned a little, and slipped, and he fell down in the machinery, and one of his legs at least went down through to the floor where there was an opening at that time, between the connecting rod and what is called the eccentric rod, and the motion of the machinery injured his leg, and there was a little key on one side of the rods that was countersunk into the machinery that cut his knee. They stopped the

machinery, of course, immediately, and he was taken out. The result was, he brought this suit.

The petition sets out that the defendants failed in a great many respects in the performance of their duty towards this plaintiff: They omitted guards to this machine, and they failed to furnish a reasonably safe place for the plaintiff to work; failed to furnish proper light, and several other matters of that kind that counsel very ingeniously thought that the defendants should have done in this matter in order to protect this plaintiff.

It seems to us very clear that defendants had given him a safe place to work, if he had stayed where he belonged and continued to work until the machinery was stopped, and after it was stopped, to have then proceeded to perform the duty that was incumbent upon him in closing these windows, when in doing so there would have been no danger at al. It is very apparent, it seems to us, that this man received this injury through his own negligence and carelessness in going to a place where he ought not to have gone when the machinery was in full operation, and climbed over the machine, and stepped from one point to another, in doing which he received the fall and injury.

The court, however, took the case from the jury on the ground that there was no negligence on the part of the defendant; that the statute which had been invoked by the plaintiff did not apply to the machinery. We have examined this statute and endeavored to ascertain its meaning, and also to ascertain the character of the machinery directly at the point where the plaintiff fell. The statute (94 O. L., 42) requires:

"That owners and operators of * * * all places where machinery of any kind is used or operated, shall take ordinary care, and make such suitable provisions as to prevent injury to persons who may come in contact with any such machinery or any part thereof; and such ordinary care and such suitable provisions shall include the casing or boxing of all shafting when operating horizontally near floors, or when in perpendicular or other position operating between, from, or through floors, or traversing near floors, or when operating near passageway, or directly over the heads of the employes."

This man was in no way injured, as we understand the operation of this machinery, by any shaft that was in motion at the time. Further it says:

"The enclosure of all exposed cogwheels, flywheels, band-wheels, all main belts transmitting power from engine to dynamo, or other kind of machinery, and all openings through floors, through, or in which such wheels or belts may operate, with substantial railing; the covering, cutting off, or counter-sinking of keys, bolts, set-screws, and all parts of wheels, shafting, or other revolving machinery, projecting unevenly from and beyond the surface of such revolving parts of such machine."

We are unable to see where that statute in any manner relates to the machinery that was in use at this point. This covering, as we understand it, has reference to a bolt or a set-screw or some other article that projects from a revolving wheel, because, when the wheel is in motion, it might not be seen, and it might very easily catch in the clothing, or something of that kind. But there was nothing of that kind in operation at this point, so that the statute which has been invoked does not cover the case, as we think. It is said we ought to give a very liberal construction to the statute. We are of opinion that no fair and liberal construction of the statute would be of any benefit to this plaintiff in that respect. In short, we fail to see where these defendants have been guilty of any negligence whatever in regard to the work that was being done or the machinery that was being used and operated at that time; that they did all that prudent men would properly and fairly do. This plaintiff was sent there, and near the close of work hurried because he was evidently very anxious to get away, and undertook to do that which should have been done after work was stopped, before it was stopped, and it was through his own act of negligence in doing this that he received his injury. The judgment of the court of common pleas will therefore be affirmed.

It is suggested by Judge Parker that even if there was any nut or set-screw there that might have contributed to this injury, there was nothing in the pleadings that covers that cause of action in any manner or form, and it was not relied upon in the trial of the case as a ground for recovery.

PARKER, J.

There was no reference made to it, and it was not sought to be brought out in any way. It is a little difficult to get at

exactly what this machinery was, or whether or not the key which fastened the connecting rod to the disk may not have been a key of a piece of machinery that required to be sunk, and as Judge Haynes says, it is not alleged as negligence.